This is an appeal from a judgment entered on a jury verdict awarding plaintiff $31,796.42 in an action for property damage and loss of use of a commercial vehicle. The issues raised by the appealing defendant concern the correctness of certain jury instructions and whether the trial court erred in not directing a verdict in the defendant's favor. We affirm.
Prior to the accident made the basis of the present lawsuit, the defendant William Campbell had contracted to sell a house that he owned in Tuscaloosa, Alabama, to a Mr. Ashcroft. The agreement required Campbell to move and deliver the house to Ashcroft's property in Northport, Alabama. In order to meet this obligation, Campbell hired defendant Danny Ray Sturdivant, d/b/a Quality Construction Company, to move the house.
Late in the evening of January 13, 1984, Sturdivant began to move the house after loading it onto a trailer that was pulled by *Page 925 
a truck. There was an escort vehicle in front of, and another behind, the truck pulling the house. The escort vehicles and the truck pulling the house each had amber beacon lights turned on. There were no flashers or reflectors on the house. At some point soon after the move began, Campbell pulled in behind the procession in his own vehicle.
When the house-moving convoy reached Carol's Creek bridge on Highway 69 in Northport, Sturdivant discovered that the house was too wide to clear the bridge reflectors located on signposts at either end of the bridge, so the convoy was stopped in order to temporarily remove the reflectors. The house and truck were stopped on the south end of the bridge and the lead escort vehicle was driven across the bridge and parked in the center of the two-lane highway, with its engine running, its headlights on, and its amber beacon light flashing. Sturdivant, Campbell, and the rear escort driver got out of their vehicles and began dismantling the bridge markers.
About this time, an 18-wheel coal truck owned by plaintiff/appellee Faulkner Trucking Company approached Carol's Creek bridge from the opposite direction, i.e., from the north. Southbound motorists approaching the bridge from that direction first encounter a curve and after the curve there is a straightaway to the bridge. While still in the curve, the driver of the coal truck, Johnny Tidwell, observed the lead escort vehicle and the truck pulling the house. Tidwell testified that at this point, it appeared to him that these vehicles were on their side of the road and moving. He further testified that the house blocked his view of the vehicles behind the house. Nonetheless, Tidwell reduced his speed and, after straightening his vehicle out, he realized that the lead escort vehicle was actually stopped in the middle of the road. He testified that he was then about 50 yards from the lead escort and was traveling 30-45 miles per hour. In order to avoid a collision, Tidwell swerved around the lead escort vehicle. By then, he was at the bridge and still reducing speed. He then observed that the second truck, i.e., the truck pulling the house, was also stopped in the middle of the road. Tidwell tried unsuccessfully to stop the coal truck. He collided with the truck pulling the house.
Both vehicles were substantially damaged in the collision but, fortunately, there were no injuries. Because the collision had disabled Sturdivant's truck, Campbell left the scene and returned with one of his own trucks in order to complete the move. Campbell hitched the trailer to his truck and pulled the house to its destination.
Subsequent to the collision, Faulkner Trucking Company and Employer's Insurance Company, by virtue of its subrogation rights for money expended to repair Faulkner's truck, brought suit against Sturdivant and Campbell. The complaint alleged that Sturdivant and Campbell negligently or wantonly caused the collision and sought compensation for property damage to and loss of use of the coal truck. The complaint also alleged that Sturdivant was the agent, servant, or employee of Campbell at the time of the accident. Both defendants filed answers denying the allegations of the complaint and pleading contributory negligence on Tidwell's part as a defense.
The first trial ended in a mistrial. In the second trial the jury returned a verdict in favor of the plaintiffs and against both defendants in the sum of $31,796.42. Defendant Campbell raises several issues. Defendant Sturdivant is not a party to this appeal.
The first issue raised by Campbell is whether the trial court erred in charging the jury on the inherently or intrinsically dangerous activity exception to the general rule of non-liability for the wrongful acts of independent contractors. Campbell argues that the issue was not raised by the pleadings or at trial and that the given charge is incorrect, confusing, and misleading. As part of its oral charge, the trial court instructed the jury as follows:
 "Now, one is not ordinarily responsible for the negligent acts or wanton acts of his independent contractor. Alabama law recognizes an exception to the general rule, and that exception is that if you, *Page 926 
the Jury, find that moving the house was an inherently or intrinsically dangerous activity or if you find that the maintenance of safe conditions in connection with the work is essential to the protection of the public, then the defendant, William Campbell, cannot delegate his duty or responsibility to an independent contractor and he would be responsible for the negligent or wanton acts of his independent contractor done within the scope of that employment."
Appellees maintain that Campbell failed to preserve any error in the giving of the foregoing charge. Rule 51 of the Alabama Rules of Civil Procedure reads in part:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
A party waives any possible error as to a trial court's oral charge by failing to specifically object and to state grounds for the objection. Beneficial Management Corp. of America v.Evans, 421 So.2d 92 (Ala. 1982); Great Atl. Pac. Tea Co. v.Sealy, 374 So.2d 877 (Ala. 1979). Appellant made the following objection to the trial court's charge: "We will except [to] the charge on inherently and intrinsically dangerous activity; that charge."
Campbell stated no grounds in support of this objection, and it was overruled by the trial court. His failure to assert specific grounds of objection to this jury instruction at trial waived any alleged error. Employers Casualty Ins. Co. v.Hagendorfer, 393 So.2d 999 (Ala. 1981).
Campbell also takes exception to the trial court's charging the jury on the sudden emergency doctrine. He argues that the charge is contrary to the evidence and should not have been given. Particularly, Campbell maintains that there was no evidence that a sudden emergency existed and that, if a sudden emergency did exist, it was brought about by Johnny Tidwell's own conduct. The trial judge included the following in his oral charge to the jury:
 "If a person without fault of his own is faced with a sudden emergency, he is not to be held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation; and the fact, if it be a fact, that he does not choose the best or safest way of escaping peril or preventing injury is not necessarily negligence; but the standard of care required in an emergency situation is that care which a reasonably prudent person would have exercised under the same or similar circumstances."
The parties do not dispute that this is a correct statement of the law. See Alabama Pattern Jury Instructions: Civil 28.15 (1974). The issue is whether there was evidence warranting the giving of the sudden emergency charge to the jury. In this regard, this case is similar to Williams v. Worthington,386 So.2d 408 (Ala. 1980). In that case, We held as follows:
 "Counsel for the appellant is correct in citing to this Court the rule that one who has by his own conduct brought about the sudden peril may not invoke the benefits of the doctrine. Johnson v. Coker, 281 Ala. 14, 198 So.2d 299 (1967). We recognize this doctrine, but it is equally true that when the evidence presents a question of fact as to whether the defendant contributed to the emergency, the giving of the charge is proper and the jury must determine whether the defendant was faced with a 'sudden emergency.' We find that the evidence here was sufficient to create a jury question on the matter of whether the defendant, by his own conduct, brought about the sudden emergency. The giving of the instruction was not error. Miller v. Dacovich, 355 So.2d 1109 (Ala. 1978)."
Worthington, at 409. Likewise, there exists sufficient evidence in the present case to create jury questions of whether Faulkner's truck driver was faced with a sudden emergency and, if so, whether he caused and/or contributed to it. The trial court did not err in giving the instruction. Evidence that Tidwell might have been able to stop before the collision does not change *Page 927 
this conclusion, in light of the evidence that the perilous situation was not of his own making. Johnson v. Coker, 281 Ala. 14, 198 So.2d 299 (1967).
Finally, appellant argues that the trial court erred in not granting his motion for a directed verdict, because, he says, there was no evidence of any agency relationship between Sturdivant and appellant. It is Campbell's position that the evidence clearly established that Sturdivant was an independent contractor. Appellees argue that there was sufficient evidence to present a question of fact for the jury as to whether Sturdivant was Campbell's agent and that, even if he was not, Campbell would not have been entitled to a directed verdict, given the exceptions to the general rule that one who engages an independent contractor is not liable for the independent contractor's wrongful acts.
A trial court will not be reversed for refusing to direct a verdict in favor of a movant if a scintilla of evidence exists in favor of the party opposing the motion. Carnival CruiseLines, Inc. v. Snoddy, 457 So.2d 379 (Ala. 1984). When reviewing the denial of a directed verdict, we must view the entire evidence in a light most favorable to the non-movant.Snoddy, supra. Purcell Co. v. Spriggs Enterprises, Inc.,431 So.2d 515 (Ala. 1983).
This Court recently summarized the rules of agency inBrown v. Commercial Dispatch Publishing Co., 504 So.2d 245
(Ala. 1987). In that case we stated:
 "Whether one is the agent of another is ordinarily a question of fact to be decided by the jury. Daugherty v. M-Earth of Alabama, Inc., 485 So.2d 1145 (Ala. 1986). As was stated in Cordes v. Wooten, 476 So.2d 89 (Ala. 1985): 'It is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute.' For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Solmica of Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970). An agency relationship is not created when the employer merely retains the right to supervise or inspect the work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications and retains the right to stop work that is not properly done. Weeks v. Alabama Elec. Co-op, Inc., 419 So.2d 1381
(Ala. 1982)."
Brown, at 246.
Thus, the question is whether the record, viewed in a light most favorable to appellees Faulkner Trucking and Employers Insurance, contains a scintilla of evidence that Sturdivant was the agent, employee, or servant of Campbell. If so, the trial court properly submitted the issue to the jury for resolution.
As to whether Sturdivant was acting as Campbell's agent at the time of the collision, the record contains evidence of the following facts: Campbell hired Sturdivant to move the house. Although Campbell had been involved with moving houses for over 20 years, Sturdivant had been in the business of moving houses for only about one year. On the night of the move, Campbell furnished some laborers, apparently to help with the moving preparations. He was also present for the duration of the move and drove a rear escort vehicle during the move. Campbell was one of the men who got out of their vehicles to dismantle the bridge markers from the signposts. Although the agreement was that setting the house down was Sturdivant's responsibility, Campbell was out there that night in order to help Mr. Ashcroft choose the best place to put the house. After the collision, it was Campbell who, with his own truck, completed the move of the house to its destination.
Furthermore, Campbell himself testified as follows: "I would say this, I have moved [houses] for 20 years; and if I saw anything was wrong, I could certainly have called the police and gotten some help. If I thought in my judgment I saw anything wrong, I would have stopped and called the city police and the highway patrol and gotten some help, if I saw anything in my *Page 928 
judgment." He also testified that he was present during the move "to offer any assistance or advice [he] could give."
Agency is determined by the evidence as a whole, and not necessarily by how the parties characterize their relationship.National Sec. Fire Cas. Co. v. Bowen, 447 So.2d 133 (Ala. 1983). Where the evidence as to the existence of agency is in dispute, or reasonable adverse inferences are deducible from the evidence, the resolution of the question of agency raises an issue of fact for the jury. Trans-America Ins. Co. v.Wilson, 262 Ala. 532, 80 So.2d 253 (1955). Viewing the evidence in a light most favorable to plaintiffs, we find ample evidence to raise an issue of fact for the jury on the agency issue; thus, the trial court's decision to submit the issue to the jury was not error.
In addition to the foregoing, we note that there was also sufficient evidence to go to the jury on the "inherently dangerous activity" issue.[1] In this regard, even if Sturdivant was in fact an independent contractor, Campbell would not have been entitled to a directed verdict.
AFFIRMED.
JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] We note that the moving of buildings over public streets is a highly regulated activity. Both Tuscaloosa and Northport have ordinances regulating the moving of buildings. In addition, the Alabama State Highway Department has promulgated rules and regulations governing such activity pursuant to Ala. Code (1975), § 32-9-29. The evidence of record shows that both Sturdivant and Campbell were in violation of many of these state and local regulations.